UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| BEVERLY THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 00-BU-0090-M |
| | ) | |
| THE EARTHGRAINS COMPANY, | ) | **ENTERED** |
| | ) | |
| Defendant. | ) | OCT 11 |

## Memorandum Opinion

In this action, Plaintiff Beverly Thomas ("Plaintiff") contends that her former employer, Defendant The Earthgrains Company ("Defendant" or "Earthgrains"), is liable for violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"). More specifically, Plaintiff claims that she was subjected to unlawful sex discrimination and retaliation, in that a co-worker sexually harassed her and that after she complained about it, she was harassed and constructively discharged in retaliation. Now before the Court are four motions, each filed by Defendant. The first is one for summary judgment (Doc. No. 28), in support of which Defendant has filed evidence and a brief. After Plaintiff did likewise in opposition, Defendant filed its three other motions, which request the Court to strike certain portions of Plaintiff's evidentiary submission. In two of the motions (Docs. No. 33 & 34), Defendant argues that portions of an affidavit Plaintiff submitted should be excluded because they allegedly contradict her prior deposition testimony, are not made on personal knowledge, and contain irrelevant information. In the other motion (Doc. No. 32), Defendant similarly argues that portions

of an affidavit sworn by Nadine Hill, Plaintiff's former co-worker, which Plaintiff submitted, should be disregarded on the grounds that it allegedly contains inadmissible hearsay, statements not based on personal knowledge, and contradicts assertions Hill made in a later affidavit, which Defendant submitted in support of its motion for summary judgment.[1]  All of these motions are now ripe for decision.  Upon consideration, the Court concludes that Defendant's motions to strike portions of Plaintiff's affidavit (Docs. No. 33 & 34) are due to be DENIED[2]; that Defendant's motion to strike portions of Nadine Hill's affidavit (Doc. No. 32) is due to be GRANTED IN PART AND DENIED IN PART; and that Defendant's motion for summary judgment (Doc. No. 28) is due to be GRANTED IN PART, as it pertains to Plaintiff's sexual harassment claim and her constructive discharge claim, AND DENIED IN PART, as it pertains to her retaliatory hostile environment claim.

---

[1] The Court agrees with Defendant's motion, Doc. No. 32, that certain statements in Nadine Hill's affidavit submitted by Plaintiff are due to be excluded because they are not made upon personal knowledge as required by Fed. R. Civ. P. 56(f), in that they are mere speculation or conclusions about the mental operations of others. See Adusumilli v. City of Chicago, 164 F.3d 353 (7th Cir. 1998).  The excluded statements are:
  (1) [Brenda Chandler and Tanja "Toni" Wooten] wanted Beverly to [discuss the sexual harassment case] and then they would have grounds for firing her."
  (2) "Brenda could not stand Beverly being there and she having to look at her every day.  Tonya went along with anything Brenda was doing."
  (3) "It was apparent they were trying to get rid of Beverly.  They wanted me to form a bad impression about Beverly.  This is the reason they met with me the first day."
  (4) "This was their reason to get rid of her.  They had finally found something and they had used me to do it."
In all other respects, Defendant's motion, Doc. No. 32, is denied.

[2] In Docs. No. 33 & 34, Defendant claims that portions of Plaintiff's affidavit contradict her prior sworn testimony and are therefore due to be excluded on summary judgment. See Van T. Junkins, Inc. v. United States Indus., 736 F.2d 656, 657-58 (11th Cir. 1984).  However, the Court concludes that these affidavit portions either are not so inherently contradictory with respect to her prior deposition testimony so as to warrant their exclusion, see Kennett-Murray Corp. v. Bone, 622 F.2d 887, 893 (5th Cir. 1980), or they simply do not create a genuine issue of material fact in any event.  Thus, these motions are denied.

## I. SUMMARY JUDGMENT STANDARDS

On a motion for summary judgment, the court assesses all of the proof the parties can bring to bear in order to ascertain whether a genuine need for trial is present. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is weighed heavily in favor of the non-movant; it is appropriate only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party seeking summary judgment has the initial responsibility of informing the Court of the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. Celotex, at 323. See also Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its to initial burden, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 523 (11th Cir. 1994). In resolving whether a given factual dispute requires submission to a jury, a district court must view the record in the light most favorable to the nonmoving party and resolve all reasonable inferences in the nonmovant's favor. Rooney v. Watson, 101 F.3d 1378, 1380 (11th Cir. 1996) (citing Hale v. Tallapoosa Co., 50 F.3d 1579, 1581 (11th Cir. 1995)).

## II. DISCUSSION

**A. Hostile Work Environment - - Sex**

In her complaint, Plaintiff alleges that while she was Defendant's employee at a bakery thrift store in Fort Payne, Alabama, she was subjected to sexual harassment by a co-worker, Donnie Chandler ("Mr. Chandler"), a route driver who regularly delivered

bread and other baked goods to the store. Plaintiff further alleges that this sexual harassment created a discriminatory hostile work environment, for which she might recover under Title VII. See Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57 (1986). However, even assuming her co-worker did create a sexually discriminatory hostile work environment, in order to recover against Defendant for such, Plaintiff must be able to prove that her "employer knew or should have known of the harassment in question and failed to take prompt remedial action." Henson v. City of Dundee, 682 F.2d 897, 905 (11th Cir. 1982).

Plaintiff acknowledges that no one else ever witnessed the harassment she complains of, so the issue becomes whether the employer had actual knowledge of the harassment otherwise. Plaintiff first complained about the harassment in April 1998 to her co-employee, Tammy Gray. However, this was insufficient to charge the Defendant employer with knowledge of the harassment. It is perfectly clear that Gray, who held no supervisory authority whatsoever, is neither "higher management," see Splunge v. Shoney's, Inc., 97 F.3d 488, 490 (11th Cir. 1996), nor a person to whom harassment was to be reported pursuant to Defendant's sexual harassment policy, see Breda v. Wolf Camera & Video, 222 F.3d 886, 889-90 (11th Cir. 2000). Rather, it appears that Defendant could only be charged with actual knowledge of the harassment when, on May 12, 1998, Gray reported Plaintiff's harassment complaint against Mr. Chandler to the store manager, Tanja "Toni" Wooten, who, in turn, immediately telephoned her superior, Bill Bethune, Defendant's Director of Sales, and told him about it. The undisputed evidence shows that Bethune and Wooten met with Plaintiff the following day, May 13, 1998, whereupon Plaintiff told them of the harassment. On May 18, 1998, Plaintiff met with Bethune and Ronnie Cannon, Defendant's Zone Vice President, who asked her what she wanted to have done to Mr. Chandler. Plaintiff replied that she did not want him to come into the store anymore, but that she did not want him fired. It is further

undisputed that, in accordance with Plaintiff's request, Defendant prohibited Mr. Chandler from going into the Fort Payne store and also suspended him, and he never again sexually harassed Plaintiff. One can hardly conceive how Defendant might have taken more prompt, appropriate, and effective remedial action. Accordingly, summary judgment will be granted on Plaintiff's sexual harassment claim. See Coates v. Sundor Brands, Inc., 164 F.3d 1361, 1365-66 (11th Cir. 1999); Kilgore v. Thompson & Brock Management, Inc., 93 F.3d 752, 754 (11th Cir. 1996); Steele v. Offshore Shipbuilding, Inc., 867 F.2d 1311, 1316 (11th Cir. 1989).

### B. Hostile Work Environment - - Retaliation

Plaintiff also alleges, however, that after she reported Mr. Chandler for sexually harassing her, she was further subjected to a hostile work environment in retaliation for making such complaints. Plaintiff indicates that the great majority of the harassing conduct was engaged in by her co-worker at the store, Brenda Chandler ("Mrs. Chandler"), who also happened to be the wife of Mr. Chandler. In short, Plaintiff contends that although she and Mrs. Chandler were "really good friends"[3] before she made her complaint, Mrs. Chandler was "just always a bitch"[4] to her afterwards, repeatedly insulting and ridiculing Plaintiff by doing such things as making fun of her appearance, family, and wardrobe, and by telling her to "get a life" and that she was a "miss-know-it-all." Plaintiff urges that this harassment "was constant" and that "[t]here was never a let up."[5] Plaintiff also points to a confrontation that occurred on January 7, 1999, whereupon Mrs. Chandler, unprovoked, took Plaintiff's mother to the back room of the store and screamed at her about how Plaintiff had bad problems; that she, Mrs.

---

[3]Plaintiff's Depo. at 112.

[4]Plaintiff's Depo. at 229.

[5]Plaintiff's Affidavit at ¶ 35.

Chandler, was not responsible for them; and how she would not be intimidated by Plaintiff's mother and family. Plaintiff claims that she herself was yelled at by Mrs. Chandler during this incident, as Mrs. Chandler indicated to Plaintiff that her entire family was coming in trying to intimidate her, and Mrs. Chandler loudly denied that her husband had done anything to Plaintiff.

Under the anti-retaliation provision of Title VII, it is unlawful for an employer to "discriminate" against any employee because he has "opposed any practice made unlawful" by the substantive provisions of Title VII. 42 U.S.C. § 2000e-3(a). Defendant would appear to concede that Plaintiff can recover for unlawful retaliation under Title VII if she can prove that (1) she engaged in statutorily protected activity; (2) she was subjected to harassment that was "severe or pervasive" enough to have altered the conditions of her employment; (3) such harassment was based on the fact that she engaged in protected opposition; and (4) there is a basis to hold the employer liable for the harassment. Cf. Mendoza, 195 F.3d at 1245 (listing the elements of a hostile-environment sexual harassment claim). While the Eleventh Circuit Court of Appeals has not expressly recognized that Title VII protects against a hostile work environment based on retaliation, given Defendant's concession, the Court will assume that it does.[6] Defendant argues that Plaintiff cannot prove any of these elements. The Court, however, concludes that there are genuine issues of fact remaining, including: (1) whether Plaintiff's complaint of sexual

---

[6]The Eleventh Circuit has held, however, that Title VII's coverage is not limited to protecting employees only against retaliatory "ultimate employment actions," such as termination or failure to hire. See Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1455-56 (11th Cir. 1998) (also suggesting that "toleration of harassment by other employees" may be actionable retaliation (quoting Wyatt v. City of Boston, 35 F.3d 13, 15-16 (1st Cir. 1994))). A number of circuit courts of appeals have also held that an employer may be liable for a retaliation-based hostile work environment. See Drake v. Minnesota Mining & Mfg. Co., 134 F.3d 878, 886 (7th Cir. 1998); Gunnell v. Utah Valley State College, 152 F.3d 1253, 1264 (10th Cir. 1998); Ray v. Henderson, 217 F.3d 1234, 1245 (9th Cir. 2000); Morris v. Oldham County Fiscal Court, 201 F.3d 784, 791-92 (6th Cir. 2000).

harassment reflected an honest and reasonable belief that she was subjected to a sexually hostile work environment, see Clover v. Total System Services, Inc., 176 F.3d 1346, 1351 (11th Cir. 1999), given that Defendant's punishment of Mr. Chandler appears to suggest that even Defendant agrees that Plaintiff was sexually harassed; (2) whether the harassment Plaintiff allegedly endured was actually based on the fact that she complained about sexual harassment, cf. Gupta v. Florida Bd. of Regents, 212 F.3d 571, 583-84 (11th Cir. 2000) (harassing conduct not based on sex or gender does not count towards assessing a sexually hostile work environment), given that Plaintiff alleges that such harassment began immediately after she lodged her complaint against Mr. Chandler; (3) whether such harassment was sufficiently severe or pervasive to be actionable, see Mendoza, supra; and (4) whether there is a basis to hold the employer liable, see Breda, supra, given that Plaintiff contends that she complained to Wooten in July 1998 about Brenda's conduct and was ignored and that Plaintiff also complained to others in management about Mrs. Chandler's outburst towards her mother and they refused to discipline her. Accordingly, the Court will deny Defendant's motion for summary judgment as it pertains to Plaintiff's Title VII claim that Defendant is liable for a hostile work environment based on retaliation.

### C. Constructive Discharge

Finally, Plaintiff alleges that Defendant constructively discharged her in retaliation for her complaint of sexual harassment. Plaintiff resigned from Defendant's employment on the evening of January 7, 1999. In order to prove constructive discharge, an employee "must demonstrate that [her] working conditions were so intolerable that a reasonable person in [her] position would be compelled to resign." Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1284 (11th Cir. 1999). Thus, the test is an objective one, and a plaintiff's subjective feelings about her employer's actions, whatever they may have been, are not determinative. Doe v. Dekalb County School Dist., 145 F.3d 1441, 1450 (11th

Cir.1998).

Defendant argues that the evidence shows that Plaintiff cannot reach the threshold required to establish this claim. The Court agrees. While the Court has determined that a question of fact remains with respect to whether Plaintiff's work environment was hostile or abusive for purposes of Title VII, the question on that issue is a relatively close one. Standing alone, this harassment clearly was not sufficient to compel a reasonable person to quit. But it appears that Plaintiff's claim that she was constructively discharged is also related to two other factors: (1) that she was accused of and investigated for taking merchandise from the store; and (2) that members of Defendant's management, Virgil Russell and Gene Thomas,[7] refused to discipline Mrs. Chandler in connection with the aforementioned incident between Mrs. Chandler and Plaintiff's mother. However, the Court concludes, as a matter of law, that neither of these considerations are sufficient to indicate that a reasonable person would have felt compelled to resign.

The record shows that on January 6, 1999, Plaintiff had been confronted at a meeting by Russell, Defendant's Zone Sales Manager, and Thomas, Defendant's Retail Sales Manager, because of an accusation that Plaintiff had taken merchandise from the store without paying for it. Ultimately, Russell and Thomas decided that the theft charge could not be substantiated, so no further action was taken against Plaintiff. After the meeting, Plaintiff indicated to Wooten that she believed Mrs. Chandler was responsible for making charge, and Plaintiff told Wooten that if she found out it was, in fact, Mrs. Chandler, she would "drag her out in the street and beat her good."[8] However, it is undisputed that Mrs. Chandler was not involved. Rather, it was a newly-hired clerk, Nadine Hill, who reported suspicions to Wooten that Plaintiff had stolen some items.

---

[7]Gene Thomas is not related to Plaintiff.

[8]Attachment C to Wooten's Affidavit at 27.

While Plaintiff seems to argue that Hill, Wooten, Russell, and Thomas were retaliating against her with respect to making and investigating the theft allegation, there is no evidence suggesting that such is actually the case. The record shows that, even if Hill was perhaps mistaken about Plaintiff stealing, there is nothing to contradict either her assertion that she made the allegation in good faith or that Wooten, Russell and Thomas were simply following procedure by investigating Hill's charge. Thus, while Plaintiff may have believed that the theft charge and investigation contributed to making her working conditions so intolerable that she had to quit, she has failed to demonstrate that such charge or investigation were in any way motivated by her complaint of sexual harassment against Mr. Chandler. Accordingly, the Court concludes that they cannot be considered with respect to her Title VII retaliatory constructive discharge claim. Cf. Gupta, supra (conduct that no reasonable person would consider to be gender-related or of a sexual nature is not counted as harassment for purposes of assessing whether an employee was subjected to a discriminatory hostile work environment because of sex).

After the aforementioned incident occurred between Mrs. Chandler and Plaintiff's mother the next day, Russell and Thomas returned to the store at the Plaintiff's urging and held a meeting. It is true, as Plaintiff emphasizes, that they declined to take any disciplinary action against Mrs. Chandler for what she had said to Plaintiff's mother. However, they strongly and repeatedly emphasized to everyone generally that personal disagreements between employees simply could not be brought into the workplace, and that whether one employee did or did not like another personally was beside the point. The only thing that was important as far as the company was concerned, they indicated, was that all employees, regardless of their personal feelings, had to treat each other and all customers in a professional manner, with courtesy and respect, while in the store. If this was not done, they said, someone would likely be fired. A reasonable person simply could not have interpreted these remarks as indicating that continued harassment against

Plaintiff or her family was going to be tolerated. The Court would agree that Plaintiff could have reasonably construed some of Russell and Thomas's comments at the meeting as a warning to her that she also had to put aside her personal differences and get along with Mrs. Chandler, perhaps implying that Russell and Thomas believed Plaintiff might have been partially responsible for any working difficulties with Mrs. Chandler. However, it must be kept in mind that at the time of the meeting Plaintiff was under the erroneous impression that it was Mrs. Chandler who had reported her for stealing, and Plaintiff openly expressed at the meeting that she believed Mrs. Chandler had done so in order to get her fired because of the complaint against Mr. Chandler and that she, i.e., Plaintiff, had made threats of physical violence against Brenda to Wooten the night before. Russell and Thomas, though, knew that Brenda was not the person who had reported Plaintiff, and they indicated to Plaintiff that her threats against Brenda were a violation of company policy. However, Wooten, Russell, and Thomas all stated repeatedly that they simply wanted to "wipe the slate clean" and did not want anyone to get fired or quit over the problems between Plaintiff and Brenda. In short, the Court concludes that the evidence is legally insufficient to find that a reasonable person would have felt compelled to resign under such circumstances.

### III. CONCLUSION

Based on the foregoing, the Court concludes: Defendant's motions to strike portions of Plaintiff's affidavit (Docs. No. 33 & 34) are due to be DENIED; Defendant's motion to strike portions of Nadine Hill's affidavit (Doc. No. 32) is due to be GRANTED IN PART AND DENIED IN PART; and Defendant's motion for summary judgment (Doc. No. 28) is due to be GRANTED IN PART, as it pertains to Plaintiff's sexual harassment claim and her constructive discharge claim. The Court concludes that there are no genuine issues of fact and Defendant is entitled to judgment as a matter of law on those claims. However, the motion for summary judgment is also DENIED IN

PART, as it pertains to Plaintiff's retaliatory hostile environment claim.

DONE this 11th day of October, 2000

_____
H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE